MARRERO, PLAINTIFF AND APPELLEE *v.* FORDHAM ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in an Action of Filiation and to Recover Inheritance.

No. 1833.—Decided July 21, 1919.

FILIATION — ACKNOWLEDGMENT — NATURAL CHILD. — When in an action for the acknowledgment of a natural child the lower court holds that the plaintiff has been in the continued possession of the status of natural child of the alleged

father, as shown by the direct acts of the latter with regard to plaintiff; the said conclusion will not be interfered with on appeal unless passion, prejudice, partiality or manifest error is shown in the weighing of the evidence.

ID.—DECREE IN ANOTHER STATE.—Prohibition to again contract marriage decreed by a court of New York in accordance with a statute of that State, pleaded by the defendant in an action for the acknowledgment of a natural child in order to show that the father and the mother could not have contracted marriage at the time of the conception and birth of the plaintiff, has no extraterritorial effect.

JURISDICTION—DE FACTO JUDGE.—On the day of the trial of this case the term for which the judge of the court had been appointed had expired, but he had been appointed by the Governor for a new term and it was not shown that on that date the Senate had failed to approve such appointment. If the judge did not act as a *de jure* judge, indisputably he acted as a *de facto* judge, for he and the parties entertained that belief.

The facts are stated in the opinion.

Mr. O. B. Fraser for the appellants.

Mr. José Tous Soto for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On November 22, 1915, Amelia Marrero, represented by her mother with *patria potestas*, Rafaela Marrero, brought an action in the District Court of Ponce against María D. Fordham and Esther Bessie Boerman, widow and mother respectively and testamentary heirs of Charles M. Boerman, deceased, praying that the plaintiff be adjudged the acknowledged natural daughter of Charles M. Boerman, entitled to bear his surname and to inherit a fourth part of his estate; that a legacy of $5,000 left by Boerman to the plaintiff be calculated in her legal portion without any conditions or restrictions, and that the costs, disbursements and attorney fees be imposed upon the defendants.

The plaintiff alleges as the basis of her action that she is the acknowledged natural daughter of Rafaela Marrero and was born in Ponce on September 16, 1901, as the result of the illicit carnal relations between the said Rafaela Marrero and Charles M. Boerman while both were single and without impediments to contract marriage; that Boerman died in Ponce on January 30, 1915, leaving no legitimate

descendants; that Boerman left a holographic will which was probated and protocoled by a judgment of the District Court of Ponce; that in the said will Boerman named as his sole and universal heirs his wife, María D. Boerman, *nee* Fordham, a resident of Ponce, and his mother, Esther Bessie Boerman, a resident of Poneweish, Russia; that the testator left a legacy of $5,000 to plaintiff Amelia Marrero, the principal to be held in trust until she was twenty-five years old and she to receive in the meantime interest thereon at 6 per cent per annum; that from her birth until the death of Boerman the plaintiff was in continuous possession of the status of his natural child and he always furnished her with the necessary food, clothing, shelter and medical attention; that he took an interest in her education and personally enrolled her in the public schools, introducing and recommending her to the teachers as his daughter and asking that she be enrolled under the surname of Boerman; that he publicly and privately treated her as his daughter and called her his daughter, consenting and requesting that she in turn should consider and call him her father; that he caressed her, reprimanded her and made presents to her, always taking an interest in her welfare, and on several occasions said to different persons that she was his daughter and that he wished her to be so considered and treated, as she was by all who knew her.

The default of defendant Esther Bessie Boerman was entered and the other defendant, María D. Fordham, widow of Boerman, answered the complaint, denying its material allegations and setting up as new matter that on or about the 15th of November, 1893, Charles M. Boerman contracted marriage in the city of Chicago, Illinois, with Sophia Boerman; that on June 9, 1900, Sophia Boerman obtained a decree of divorce from her husband, Charles M. Boerman, in the Supreme Court of the State of New York on the ground of adultery and the decree "ordered, adjudged and decreed that it shall be lawful for the said Sophia Boerman, the plain-

tiff, to marry again in the same manner as if the defendant, Charles M. Boerman, were actually dead, but it shall not be lawful for the said Charles M. Boerman, the defendant, to marry again until the said Sophia Boerman, the plaintiff, shall be actually dead''; that Sophia Boerman lived until the year 1905 and until that time Boerman could not lawfully marry either in accordance with the laws of the State of New York or with the Spanish Civil Code which applied to him; that in his holographic will Boerman expressly stated that he was married to María D. Fordham and that neither she nor any other woman had borne him any children.

The case was brought to trial and the District Court of Ponce, finding that the material allegations of the defendant had been proved, as had also the allegation of defendant María D. Fordham that a decree of divorce had been obtained in the State of New York against Charles M. Boerman on the date and in the terms stated in the answer, entered judgment on December 20, 1917, adjudging that Amelia Marrero is the acknowledged natural daughter of Charles M. Boerman with the right to bear his surname and to receive the part of his estate which the law allows her, and ordering also that the legacy of $5,000 left in his will by Charles M. Boerman to Amelia Marrero be calculated in her legal portion without the restriction imposed by the testator.

That judgment is submitted to this court in an appeal taken by counsel for defendant María D. Fordham, widow of Boerman, who alleges the following grounds therefor: 1st. Insufficiency of the evidence to establish the plaintiff's status as natural daughter of the deceased Charles M. Boerman; 2nd. Error in finding that Boerman was capacitated to be the father of a natural child at the time of the conception and birth of the plaintiff; 3rd. Lack of jurisdiction in the trial judge to hear and determine the case.

We have examined the evidence introduced at the trial by both parties and find that it sustains the judgment, for it presents strong and convincing proof in support of the con-

clusion that plaintiff Amelia Marrero has been in the continued possession of the status of natural daughter of Charles M. Boerman by reason of the direct acts of the said Boerman with regard to the plaintiff, as required by section 135 of the Spanish Civil Code, cited by the appellant as applicable to the case because it was in force at the time of the birth of said plaintiff. The defendant herself, the widow of Charles M. Boerman, admits that the plaintiff bore the surname of her father with his consent and approbation and that for that reason he even thought of adopting her, but afterwards changed his mind. Boerman himself, although he stated in his will that he had no children, left a legacy of $5,000 to the plaintiff. The evidence examined at the trial was strong and convincing as is required in cases of the acknowledgment of natural children. *Neguerela* v. *Samohano,* 16 P. R. R. 658; *Méndez* v. *Martínez,* 21 P. R. R. 238.

The appellant has not shown that the lower court was influenced by passion, prejudice or partiality or committed manifest error in weighing the evidence.

Boerman, if he had so desired, could have lawfully married Rafaela Marrero, mother of the plaintiff, at the time of the conception and birth of the plaintiff, notwithstanding the decree of divorce of the Supreme Court of New York of June 9, 1900, to the effect that it would be unlawful for him to marry again until his wife, Sophia Boerman, died. Although the record does not show the exact date of the death of Sophia Boerman, as the defendant alleges that she lived until the year 1905, we must presume that she was living when the plaintiff was conceived and born; and we must presume also that the Supreme Court of New York, in its decree of June 9, 1900, forbidding Boerman to marry again until his wife had died, complied with the law of that State, although the statute on which it is based has not been cited. Neither that statute nor the decree of divorce prevented Boerman from marrying Rafaela Marrero in Porto Rico although his wife, Sophia Boerman, still lived.

"It is a general rule that a statute providing in general terms that the guilty party shall not marry after divorce applies only to divorces granted within the state; * * * The prohibition to re-marry is generally considered as a penalty and as having no extra-territorial effect." 9 R. C. L. 504.

The Supreme Court of Louisiana, construing the very statute of New York, expressed itself as follows in *Succession of Hernández,* 24 L. R. A. 831:

"The prohibition of the statute of New York to the effect that no second or other subsequent marriage shall be contracted by any person, during the lifetime of any former husband or wife of such person, in case the former marriage be annulled or dissolved on the ground of adultery, has no extraterritorial effect, being a penal statute; and it cannot be given the effect of annulling a contract of marriage between persons at the time residing abroad, notwithstanding it was solemnized in the city and State of New York,—the contracting parties announcing their intention to be to thereafter reside in Louisiana, and afterwards actually residing there."

The decree of the Supreme Court of New York of June 9, 1900, and the prohibitive statute of that State had no effect in Porto Rico.

But it is alleged that the statute of Porto Rico prevented Boerman from contracting marriage and the appellant maintains that the law applicable to the case is the Spanish Civil Code because the conception and birth of the plaintiff occurred before the revised Civil Code went into effect in 1902.

The provisions of the Spanish Civil Code were materially modified regarding matters of marriage and divorce by the General Order of March 17, 1899, and the first subdivision of section 3 of that order allows the marriage of persons already married if the bonds have been legally dissolved. Although subdivision twelfth thereof forbids the marriage of adulterers who have been sentenced as such by the courts, that provision did not affect Boerman who had neither been convicted of adultery in a criminal prosecution nor com-

mitted adultery with Rafaela Marrero, the mother of Amelia
Marrero.   The adulterer was not forbidden to contract a
second marriage except with his accomplice.

Regarding the lack of jurisdiction in the judge of Ponce
to hear and determine the present case, the transcript con-
tains the following:

"Before the trial was commenced the judge of the court called
the attention of the parties to the following question which he con-
sidered of importance: The term of four years for which the judge
of this court was appointed expired on November 1, 1917, or yes-
terday.   Although I have been appointed by the Governor, said the
judge. as judge of the District Court of Ponce and the appointment
was transmitted to the Senate, the judge has as yet no knowledge
that his appointment has been approved by the Senate.   The judge
believes, after studying the question as thoroughly as the time avail-
able has allowed, that he can continue to act as a *de facto* judge
until his successor is appointed; but he submits the question to
counsel for the parties in order that they may express their opinion
to the court in the matter.   The attorneys may or may not object
to the jurisdiction of the judge.   Attorneys Tous Soto and Flores
Colón stated that they raised no objection.   Messrs. Horton and
Arroyo. attorneys for the defendant, also stated that they made no
objection.   The judge said, that he believed, after a careful study
of the law and the jurisprudence, that he could continue to sit in
the cases before the court and to discharge the duties of judge as
*de facto* judge, and perhaps as *de jure* judge, but certainly as *de
facto* judge, until his successor is appointed.   Attorney Horton asked
to be allowed a few minutes for consulting his client, as the question
involved is an important one.   A few minutes later he returned to
the court-room and stated that his client did not object.   The judge
then held that he could continue to act as such in accordance with
the theory expressed in the case of *People ex rel. Wm. C. Stratton
v. George Oulton, Controller*, reported in 28 Cal. 44, and ordered
that the trial be proceeded with."

The lack of jurisdiction alleged is unfounded, for there
is no showing as to whether or not on the date of the trial
the appointment of Domingo Sepúlveda as judge of the Dis-
trict Court of Ponce by the Governor of Porto Rico had

been approved by the Senate. But in any event we understand that the said judge had jurisdiction of the case, although later such jurisdiction was denied by the appellant, for if Judge Sepúlveda did not act as *de jure* judge he certainly acted as *de facto* judge. He entertained that belief and the parties agreed with him. 22 R. C. L. 588.

The judgment must be

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.